DOREN W. GREEN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Green v. Commissioner
Docket No. 27681-82.
United States Tax Court
T.C. Memo 1984-54; 1984 Tax Ct. Memo LEXIS 623; 48 T.C.M. (CCH) 217; 47 T.C.M. (CCH) 1016; T.C.M. (RIA) 84054; January 31, 1984; As Amended May 29, 1984 *623 Doren W. Green, pro se. Steven K. Dick, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency of $633.10 in petitioner's income tax for the taxable year 1978 and an addition to tax of $31.66 under section 6653(a). [1] The issues for decision are whether petitioner (1) had unreported income and, if so, the amount thereof, (2) is entitled to certain deductions for rent and interest, (3) is entitled to deduct local transportation expenses in an amount in excess of that allowed by respondent and (4) is liable for an addition to tax for negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). As a matter of convenience, we have combined our findings of fact and opinion. The burden of proof is on the petitioner as to all issues herein. Rule 142(a). Petitioner resided in Goodland, Ind., at the time he filed his petition herein. He filed *624 a timely income tax return and an amended return on the cash basis for the taxable year ended December 31, 1978, with the Internal Revenue Service Center at Memphis, Tenn.
During the first half of 1978, petitioner owned and operated a photography business under the name "Portraits by Doren." During the second half of 1978, petitioner was employed by Morgan's Photography, Inc. From January 1, 1978, to July 15, 1978, petitioner maintained, as his sole bank account, a checking account with the State Bank of Remington, Indiana, to which a total of $7,008.65 was deposited. [2] From approximately July 15, 1978, to December 31, 1978, petitioner's sole bank account was a checking account with the National Bank of Odessa, Texas, to which a total of $5,722.21 was deposited (excluding the opening deposit of $1,259.52, representing a transfer of the closing balance in the State Bank of Remington account). [3]
*625 Respondent's main contention is that petitioner had unreported income representing the difference between the sum of the amounts of the deposits to the foregoing two bank accounts ($12,730.86) and the amounts received as wage income (and reported by petitioner on his returns) less amounts of withheld Federal income tax ($558.82) and withheld FICA tax ($254.53), or net wage income received of $3,372.05. Thus, the total of unexplained deposits is $9,358.81. Petitioner reported $4,748.40 as gross receipts of his business, "Portraits by Doren," on his amended return which had not been reported on his original return. [4] Thus, the amount unaccounted for is $4,610.41 ($9,358.81 less $4,748.40). Petitioner contends that the amount unaccounted for constitutes deposits which he made to his accounts from the proceeds of an $8,000 loan in cash by the Life Science Church of Goodland, of Which his father and mother were trustees. He introduced into evidence at the trial a promissory note dated January 4, 1978, in which he purportedly promissed to pay $8,000 with interest at 10 percent to *626 the order of "LSC of Goodland" and a series of twelve monthly receipts, each purporting to represent the payment of $66.67 interest, or a total of $800.04, in 1978. Petitioner and his father testified that the note and receipts had been executed in 1978. In his testimony, petitioner explained that he left the cash proceeds of the alleged loan in a safe at home and made deposits therefrom to his bank accounts in varying amounts as needed. He was, however, unable to identify any particular deposits made in this fashion, and our analysis of the accounts fails to reveal any correlation between the amounts deposited and the amounts withdrawn -- a correlation which, if it existed, would have tended to corroborate petitioner's testimony. The circumstances of the purported loan to petitioner are peculiar, to say the least. It was a large amount for a cash transaction. The alleged lender held itself out as a "church," and it appears to us unusual that such an organization would have engaged in such a transaction -- one that, for aught that appears in the record, seems to have had no particular reason for having been made. We are not bound to accept as gospel petitioner's testimony *627 (or that of his father), even though it was not directly contradicted; we are entitled to take into account whether the testimony is improbable, unreasonable, or questionable. Quock Ting v. United States,140 U.S. 417, 420-421 (1891); Leong v. Commissioner,T.C. Memo. 1977-19, affd. without published opinion 573 F.2d 1291 (2d Cir. 1977).Nor are we bount to conclude that the loan was made merely because a note and receipts, purportedly for interest, were executed; we think the note and the receipts were mere window dressing. Transamerica Ins. Co. v. Womack, Inc. ( E.D. Va. 1972, 31 AFTR 2d 73-471, 73-1 USTC par. 9146), affd. per curiam (4th Cir. 1974, 33 AFTR 2d 74-999, 74-1 USTC par. 9326). On the basis of the record herein and our evaluation of the testimony of petitioner and his father, we are not persuaded that a bona fide indebtedness of petitioner to LSC of Goodland existed during 1978. Petitioner has therefore failed to carry his burden of proof that the unexplained deposits in his bank accounts represented the proceeds of a loan. Accordingly, petitioner had additional income of $9,358.81 consisting *628 of $4,748.40 which petitioner has conceded he received from his business and $4,610.41 of unexplained deposits. Our reasoning as to the absence of an indebtedness also leads to the conclusion that respondent's disallowance of a deduction of $800.04 for interest should be sustained.
Petitioner also claimed a deduction of $1,200 for six months' rental expense of $200 per month. In addition to his testimony and that of his father, petitioner introduced into evidence a copy of a purported lease, dated October 3, 1977, between Portraits by Doren and LSC of Goodland in respect of premises in Goodland, Ind. We have the same problems in respect of these purported rental payments and lease as we did with the note and receipts for interest. Moreoever, petitioner's testimony places him on the horns of a dilemma. He testified that he sometimes made the rental payments out of cash which he kept in his safe at home. Since there is no evidence that any of such rental payments were made by check or cash withdrawals from bank accounts, such payments must have been made, if they were made, in cash kept at home. Under these circumstances, petitioner would appear to have had additional unexplained *629 receipts which constituted income, [5] and the allowance of a deduction for rent would be a wash.Again, petitioner has not persuaded us that the lease was anything more than window dressing, see Transamerica Ins. Co. v. Womack,Inc.,supra, and that he had any bona fide obligation to pay the rent which he claims as a deduction.Accordingly, respondent's disallowance of a $1,200 deduction for rental expense is sustained. Next, we come to the question of the automobile expenses. Petitioner introduced a diary indicating that he used his automobile to travel 6,014 miles locally in 1978. He claimed that at least 70 percent of this travel was for business, which, at the rate of 17 per mile in effect in 1978, [6] would produce a deduction of $715.67 (70 percent of $1,022.38). Other than his general statement to this effect, we have no evidence of record as to how petitioner arrived at the 70-percent level of business travel. *630 Given our problems with petitioner's testimony as to other elements of this case, we are not persuaded that he has carried his burden of proof that he should be allowed an amount in excess of the amount allowed by respondent. [7]
Finally, on the basis of the record herein, we hold that petitioner has not carried his burden of proof that his underpayment of tax was not due to negligence. As a consequence, he is liable for the addition to tax under section 6653(a). In order to reflect the foregoing and other elements of the stipulation of the parties, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The parties have stipulated that total deposits to this account were $7,978.82, but the transcript of the account, which was introduced into evidence at the trial and which controls over the stipulation ( Browne v. Commissioner,73 T.C. 723, 729↩ n. 6 (1980)), shows the amount specified above. 3. The parties have stipulated that the total deposits to this account were $5,640.89. This amount, however, fails to take into account an $81.32 deposit on July 28, 1978. See n. 2, supra.↩
4. This amount clearly should be included in calculating petitioner's taxable income for 1978.↩
5. Our prior analysis of the alleged loan of $8,000 calls into question whether that amount was ever transferred to petitioner. As a consequence, we conclude that he has failed to carry his burden of proof that he had cash at home from that source.↩
6. See Rev. Proc. 77-40, 1977-2 C.B. 574↩. 7. Respondent has conceded that petitioner used his automobile 50 percent of the time for business. Petitioner seems to be asserting that all of the travel recorded in the diary was business travel, but we think that his testimony is clearly too vague and unconvincing to support such an assertion.↩